## J. M. MADDOX v. W. L. HUDGEONS.

Decided January 24, 1903.

**1.—Sheriff—Liability for Acts of Deputy.**

Since the statute makes a sheriff liable only for the "official" acts of his deputies, he is not responsible for acts done colore officii, or for mere usurpations of authority on their part. Rev. Stats., art. 4897.

**2.—Same—Summoning Assistance.**

Where a deputy sheriff summoned assistance when there was no resistance, or ground to expect it, he was not acting in the performance of an official act or duty, since the statute authorizes the summoning of assistance only in case of resistance. Rev. Stats., art. 4906; Code Crim. Proc., art. 45.

**3.—Same—Unauthorized Act of Deputy—False Imprisonment.**

Where in the sheriff's absence and without his authority his deputy notified a constable of a reported burglary and told him the sheriff wanted him to assist in arresting the guilty parties, and the constable arrested plaintiff on suspicion, without warrant, and put him in jail on directions of the deputy, without any commitment and without the jailer's knowledge, and he was later released on order of such deputy, the sheriff, having no knowledge of the matter until after plaintiff's release, was not responsible in an action by him for false imprisonment, none of the acts constituting it being official acts.

Appeal from the District Court of Jack. Tried below before Hon. J. W. Patterson.

*Thos. D. Sporer,* for appellant.

*Speer & Speer* and *James A. Graham,* for appellee.

CONNER, CHIEF JUSTICE.—This is an appeal from a judgment in appellee's favor for damages for the sum of $200 against appellant as sheriff, and one Will McNeil, constable of precinct No. 1 of Jack County, caused by an illegal arrest and false imprisonment. The evidence offered on the trial is not before us, the cause having been here submitted upon the trial court's conclusions of fact, to which appellee makes no objection. The suit was against said sheriff and the sureties on his official bond, as such, and against said constable and the sureties on his official bond. The court found in favor of the several sets of sureties named, on the ground that appellee's arrest and imprisonment was "without any warrant or authority of law, and without the semblance of the same." No appeal has been prosecuted by McNeil, and appellee has presented no cross-assignment of error to the action of the court in releasing the sureties.

The remaining facts may be stated briefly as follows: On July 16, 1901, a burglary was committed in a distant part of Jack County. On the following morning appellant was notified thereof, and immediately left Jacksboro for the place of the burglary. At the time one Walter Isbell was the acting and qualified deputy sheriff, who, soon after the appellant's departure, notified McNeil of the burglary, and told him that appellant wanted him (McNeil) to assist in arresting the parties com-

mitting the burglary. Soon thereafter on the morning of July 17th, said McNeil, without direction on the part of Isbell, and without any warrant or authority of law whatever, arrested appellee, Hudgeons, and one Setser in the town of Jacksboro on suspicion alone, and forthwith took them to the sheriff's office where said Isbell was. Isbell had received a description of the parties who were supposed to have committed the burglary, and McNeil, after arriving at the sheriff's office, inquired of Isbell if he, McNeil, should place appellee and Setser in jail. Isbell replied that he "should," and thereupon McNeil, without other warrant or authority, took appellee and Setser to the jail. The jailer being absent, McNeil procured the keys from the jailer's wife and locked appellee and Setser up in the jail where they remained some nine hours, whereupon they were released by the jailer upon the order of Isbell. The jailer knew nothing of the imprisonment until noon of the day of said confinement, when he gave the imprisoned parties dinner, afterwards releasing them as stated. Appellee and Setser were entirely innocent of the crime charged; there was no reasonable ground for the suspicion upon which they were arrested, and the damages were in amount sufficient to support the verdict.

It appears also that appellant Maddox had not directed Isbell to request McNeil's assistance, and knew nothing whatever of said arrest or imprisonment until after appellee's release as stated. It does not appear that the jailer was informed of the circumstances of the arrest or imprisonment, or that express demand for release was made of him by appellee on the jailer's return.

We have been unable to avoid the conclusion that the judgment as against appellant is unauthorized by the facts. By title 101, Rev. Stats., relating to sheriffs and constables, authority is given sheriffs to appoint deputies, and by article 4897 sheriffs are made responsible for the *"official"* acts of their deputies, and are given the same remedies against such deputies and their sureties as any person can have against the sheriff and his sureties. In the use of the term "official" in this statute, when construed with its connected clause, the Legislature must be presumed to have had knowledge of the well defined distinction between official acts and acts done colore officii; a distinction upon which many of the apparently conflicting cases may perhaps be reconciled; and to have therefore intended to exclude responsibility for mere usurpation of authority on the part of their deputies. The deputy sheriff in question was in the performance of no duty imposed on him by law or by appellant in requesting McNeil's assistance. It is in case of resistance alone that authority is given to summon assistance, and no resistance or ground to so expect is here shown. Rev. Stats., art. 4906; Code Crim. Proc., art. 45. Isbell, then, in summoning McNeil's assistance, was in no sense acting in the performance of an official act or duty. Appellee's illegal arrest was not even directed by Isbell, and it would hence seem clear that appellant is not liable therefor. Nor was Isbell in the performance of official duty in directing McNeil to place appellee in jail. Isbell was

without authority or color of authority to direct McNeil to imprison, and such direction was no justification to McNeil in doing so. "When a prisoner is committed to jail by lawful warrant from a magistrate or court, he shall be placed in jail by the sheriff." Code Crim. Proc., art. 50. No warrant existed in the case before us, nor did there exist any of the grounds authorizing an arrest without warrant. See title 5, chap. 1, Code Crim. Proc. The code makes it the specific duty of an officer making an arrest without warrant, when authorized, to take the accused "immediately" before a magistrate, whose duty it is, after examination, to make an "order" committing the accused to the jail of the proper county, when the law and facts so require, and to issue warrant of commitment containing the requisites prescribed. See Code Crim. Proc., arts. 296-299.

The jailer did not receive the appellant; he merely found him in jail; and it nowhere appears, as before stated, that he was apprised of the illegal arrest and imprisonment by the constable, or exercised any force to detain appellee. The entire performance seems to be substantially that of the constable, who acted without authority or color of authority, and it is difficult for us to see upon what distinction the sureties were released (of which appellee makes no complaint) and appellant held liable. It is entirely clear that if the action stated was official the sureties are liable.

In speaking of the liability of the sureties Mr. Murfree, in his work on Sheriffs (new edition, section 46), says that the liability is limited to the sheriff's "official" acts. It is for the "official" acts of his deputies that he is made liable under our statutes. So it has been held in this State that the sheriff, as such, is not liable for money collected after the return day of an execution; Hamilton v. Ward, 4 Texas, 356. And so as to his sureties. Haley v. Greenwood, 28 Texas, 680; Thomas v. Browder, 33 Texas, 783; Barnes v. Whitaker, 45 Wis., 204. In State v. McDonough, 9 Mo. App., 63, it was held that where an officer goes out of the line of his official duty and unlawfully and without warrant makes an arrest though done colore officii the sureties on his bond "for the faithful performance of his duties" are not liable. In State v. Wade (Md.), Law. Rep. Ann., book 40, 628, it was held that the sureties could not be held liable for malicious acts of a sheriff in permitting a prisoner to be mobbed. In the case of Chandler v. Rutherford, by the Court of Appeals of the Indian Territory, 51 S. W. Rep., 981, it was held that a United States marshal was not responsible for the act of one of his deputies and posse who, without warrant and without knowledge of the marshal, shot an innocent person who was mistaken for a horse thief. See also, Hawkins v. Thomas (Ind. App.), 29 N. E. Rep., 157, cited in the Indian Territory case. In Dysert v. Lurty (Sup. Ct. Ok.), 41 Pac. Rep., 724, it was held that a marshal was not liable for the acts of a deputy in seizing a stock of goods without warrant and without the knowledge of his principal and not in discharge of any duty imposed upon such deputy by law. In Governor v. Pearce, 31 Ala., 465, a sheriff

and his sureties were held not to be liable for the acts of a jailer who mistreated one committed to jail on a void warrant.

Other cases might be cited, but we think the foregoing sufficient to illustrate our conclusion that in the case before us the sheriff was not liable. The acts of Isbell were without the knowledge or consent of his principal; he was not acting or purporting to act by virtue of any warrant, and not in the performance of any duty imposed by law. In other words, his conduct was not official. The case is not believed to be one of a mere abuse of an existing authority, as are the cases of Huffman v. Koppelkam, 8 Neb., 344, 12 Neb., 98; Clark v. Wynn, 46 S. W. Rep., 915.

The judgment is accordingly reversed and here rendered for appellant, but without disturbing the judgment as to other parties.

*Reversed and rendered.*

Writ of error refused.

Speer, Associate Justice, being disqualified, did not sit in this case.